IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| BRIDGET ALEX, individually and on behalf of the ESTATE OF BRANDON ALEX, and JASHAWN ALEX, | § § § § | |
| Plaintiffs, | § § | |
| | § | Civil Action No. 3:17-cv-01532-M |
| v. | § § | |
| T-MOBILE USA, INC., T-MOBILE US, INC., formerly known as MetroPCS Communications, Inc., and METROPCS MIDWAY RD., | § § § § § | |
| Defendants. | § § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is T-Mobile USA, Inc. and T-Mobile US, Inc.'s Motion for Judgment on the Pleadings, (ECF No. 8), and Motion for Leave to File Notice of Subsequent History, (ECF No. 22). For the reasons stated below, the Motion for Leave is **GRANTED**, and the Motion for Judgment on the Pleadings is **GRANTED IN PART** and **DENIED IN PART**.

I. **Factual and Procedural Background**

On March 11, 2017, Brandon Alex was injured when he "rolled off the daybed and onto the floor." (Original Pet. ¶ 27, ECF No. 1). Michelle Cohen, his babysitter, found him "grasping and barely breathing." (*Id.*) Ms. Cohen repeatedly dialed 9-1-1 from her cellphone, but was placed on hold each time. (*Id.* ¶ 28). Collectively, Ms. Cohen was placed on hold for more than forty minutes. (*Id.*) Unable to connect to the 9-1-1 dispatcher, Ms. Cohen contacted Brandon Alex's mother, Bridget Alex, who later drove him to an emergency room. (*Id.* ¶¶ 31, 76). Unfortunately, Brandon Alex was pronounced dead on arrival at the hospital. (*Id.*)

1

Brandon Alex's parents, Jashawn and Bridget Alex, instituted this action in the 101st Judicial District, Court of Dallas County, Texas, against T-Mobile USA, Inc. and T-Mobile US, Inc. (collectively, "T-Mobile") and MetroPCS Midway Rd. Plaintiffs allege that had T-Mobile's 9-1-1 "services, software, products, and technology . . . worked as required," Brandon Alex would have received timely medical assistance and survived. (Original Pet. ¶ 34). Their claims include strict liability, negligence, gross negligence, breach of express and implied warranties, violations of the Texas Deceptive Trade Practices Act ("DTPA"), and misrepresentation. (*Id.* ¶¶ 36-70). Plaintiffs also derivatively allege wrongful death, survival, and bystander claims. (*Id.* ¶¶ 71-82). T-Mobile removed the case to this Court, and the case has been stayed pending the Court's resolution of T-Mobile's Motion for Judgment on the Pleadings. (ECF No. 21).

## II. Legal Standard

A party may move for judgment on the pleadings after the pleadings are closed and when doing so would not delay trial. FED. R. CIV. P. 12(c). A motion brought pursuant to Rule 12(c) is designed to dispose of cases where "the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noticed facts." *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir. 2002). The standard of review for a Rule 12(c) motion is the same as for a Rule 12(b)(6) motion to dismiss for failure to state a claim. *See Johnson v. Teva Pharm. USA, Inc.*, 758 F.3d 605, 610 (5th Cir. 2014). To avoid dismissal, a plaintiff must plead sufficient facts to state a claim for relief that is "plausible on its face." *Gentilello v. Rege*, 627 F.3d 540, 544 (5th Cir. 2010). The court must accept all of the plaintiff's factual allegations as true, but it is not bound to accept as true "a legal conclusion couched as a factual allegation." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007). Where the facts do not permit the court to infer more than

2

the mere possibility of misconduct, the complaint has stopped short of showing that the plaintiff is plausibly entitled to relief. *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).

### III. Motion for Leave to File Notice of Subsequent History

T-Mobile moves for leave to file notice that the Supreme Court denied *certiorari* review of *Cook v. City of Dallas*, 683 F. App'x 315 (5th Cir. 2017). The Motion is **GRANTED**. The Supreme Court's denial of certiorari review "is not subject to reasonable dispute" and is relevant to the Court's resolution of T-Mobile's Motion for Judgment on the Pleadings. *See* FED. R. CIV. P. 201.

### IV. Motion for Judgment on the Pleadings

#### a. Statutory Immunity

Under Texas law, wireless service providers and manufacturers have some statutory immunity from claims arising out of their provision of 9-1-1 services under Section 771.053(a) of the Texas Health and Safety Code, which states:

> A service provider of communications service involved in providing 9-1-1 service, a manufacturer of equipment used in providing 9-1-1 service, [or] a developer of software used in providing 9-1-1 service . . . is not liable for any claim, damage, or loss arising from the provision of 9-1-1 service unless the act or omission proximately causing the claim, damage, or loss constitutes gross negligence, recklessness, or intentional misconduct.

Accordingly, to qualify for statutory immunity, T-Mobile must be one of the listed entities involved in providing 9-1-1 services, and the claims against it must arise from its provision of 9-1-1 services.

T-Mobile meets both conditions. Plaintiffs allege that T-Mobile operates 9-1-1 communications services, (Original Pet. ¶¶ 13-15), and provides 9-1-1 capable cellphones, (*id.* ¶ 49), and that their claims arise from T-Mobile's provision of 9-1-1 services. (*See, e.g.*, *id.* ¶ 34 ("[I]f the Defendants' services, software, products and technology had worked as required,

3

BRANDON ALEX would have received timely police and/or EMT assistance.")). However, the statutory immunity provided by Section 771.053(a) is not absolute. To overcome T-Mobile's immunity, Plaintiffs must plausibly allege that T-Mobile proximately caused Brandon Alex's death and that T-Mobile's acts or omissions constituted gross negligence, recklessness, or intentional misconduct. *Cook*, 683 F. App'x at 319 (citing TEX. HEALTH & SAFETY CODE § 771.053(a)). Because Plaintiffs have plausibly alleged proximate cause and gross negligence, for the reasons discussed below, the Court does not dismiss their claims on immunity grounds.

### i. Proximate Cause

The components of proximate cause are cause in fact and foreseeability. *See Ryder Integrated Logistics, Inc. v. Fayette Cty.*, 453 S.W.3d 922, 929 (Tex. 2015) (citation omitted). A tortious act or omission is a cause in fact if it serves as "a substantial factor in causing the injury and without which the injury would not have occurred." *Del Lago Partners, Inc. v. Smith,* 307 S.W.3d 762, 774 (Tex. 2010). An injury is foreseeable "if, in light of all the circumstances, a reasonably prudent man would have anticipated that the injury would be a consequence of the act or omission in question." *Hall v. Atchison, T. & S. F. Ry. Co.*, 504 F.2d 380, 385 (5th Cir. 1974). Proximate cause cannot be established by "mere conjecture, guess, or speculation." *HMC Hotel Props. II Ltd. P'ship v. Keystone-Texas Prop. Holding Corp.*, 439 S.W.3d 910, 913 (Tex. 2014).

The case of *City of Dallas v. Sanchez* is instructive on what constitutes proximate cause in a circumstance similar to the one presented here. 494 S.W.3d 722 (Tex. 2016). In *Sanchez*, 9-1-1 dispatchers received two calls within ten minutes of each other. *Id.* at 725. Both calls—from two different callers—originated from the same apartment complex, and both requested assistance with a drug overdose victim. *Id.* After the dispatcher informed the person calling on behalf of Matthew Sanchez that emergency responders were on route, the call was disconnected.

*Id.* Once responders arrived at the apartment complex, "they erroneously concluded that the two 9–1–1 calls were redundant and that a single individual was the subject of both calls." *Id.* Responders ultimately never went to the apartment of Sanchez, who died six hours later. *Id.* Sanchez's parents sued the City of Dallas, alleging that the 9-1-1 call was disconnected as a result of a defect in the City's phone system. *Id.* They alleged that their son would have received life-saving medical care but for this defect, which prevented responders from having sufficient information to correctly differentiate the two calls. *Id.*

The key issue before the Texas Supreme Court was whether the plaintiffs had adequately alleged, to survive a motion to dismiss, that a defective 9-1-1 system proximately caused Sanchez's death.[1] *Sanchez*, 494 S.W.3d at 726. The court held that due to intervening factors, Plaintiffs could not establish proximate cause. *See id.* at 728 (The death was caused by "drugs, the passage of time, and misinterpretation of information [by the emergency responders]," and the alleged malfunction was merely one of a "series of factors that contributed to Sanchez not receiving timely medical assistance."); *id.* at 727-28 ("Between the alleged malfunction and Sanchez's death, emergency responders erroneously concluded separate 9–1–1 calls were redundant and left the apartment complex without checking the specific apartment unit the dispatcher had provided to them."). Accordingly, the court held that immunity applied.[2]

---

[1] This issue came up in the following way. The City argued that governmental immunity protected it from liability. *Sanchez*, 494 S.W.3d at 725. The plaintiffs argued that immunity was waived under the Texas Tort Claims Act ("TTCA"), TEX. CIV. PRAC. & REM. CODE § 101.021. For immunity to be waived under the TTCA, "personal injury or death must be *proximately caused* by a condition or use of tangible personal or real property." *Dallas Cty. Mental Health & Mental Retardation v. Bossley,* 968 S.W.2d 339, 342–43 (Tex. 1998) (emphasis added). The City argued that immunity applied because Sanchez's death was caused by a drug overdose, not the 9-1-1 system. *Sanchez*, 494 S.W.3d at 725. Thus, although it was not addressing Section 771.053(a), *Sanchez* was addressing proximate cause in a similar factual context.

[2] The Texas Supreme Court also noted that "the use of property that simply hinders or delays treatment does not 'actually cause[] the injury' and does not constitute a proximate cause of an injury." *Sanchez*, 494 S.W.3d at 727. The statement is dictum because the court's actual analysis does not rely on this statement. As discussed, the court found that, as a matter of law, the alleged defect was too attenuated from Sanchez's death to constitute proximate cause.

The Fifth Circuit, in an unpublished opinion, reached a similar conclusion. In *Cook*, the victim, Deanna Cook, called 9-1-1 from her cellphone while an intruder was attacking her inside her home. 683 F. App'x at 317. Location-tracking technology sent Cook's location to the 9-1-1 dispatcher "within several minutes" of the call. *Id.* "Nearly fifty minutes after Cook placed her 9-1-1 call, police officers arrived at Cook's home." *Id.* However, the officers only inspected the outside of Cook's home and "left without entering the residence." *Id.* Cook's family found her body two days later. *Id.* Members of Cook's family filed suit against T-Mobile, alleging that it failed to implement proper location-tracking that would have allowed 9-1-1 operators to locate Cook "quicker than the several minutes it actually took." *Id.* at 320. Had location information been instantly transmitted, plaintiffs argued, Cook's life would have been spared. *Id.*

In dismissing the case for failure to state a claim, another judge on this Court held that T-Mobile was immune under Section 771.053(a) because, among other reasons, any alleged defect in 9-1-1 technology was not a proximate cause of Cook's death. *Cook v. T-Mobile USA, Inc.*, 2015 WL 11120974, at *1 (N.D. Tex. Sept. 22, 2015) (Solis, J.). The Fifth Circuit affirmed in an unpublished opinion, specifically highlighting the intervening factors that made the alleged defect too attenuated from Cook's death to constitute proximate cause. See *Cook*, 683 F. App'x at 321 ("Plaintiffs alleged that even after emergency personnel arrived at Cook's residence,

---

Indeed, it is hard to believe that the Texas Supreme Court would hold that delays caused by defects in 9-1-1 technologies are never actionable, as a matter of law, due to the absence of proximate cause. *C.f. Columbia Med. Ctr. of Las Colinas, Inc. v. Hogue*, 271 S.W.3d 238, 246 (Tex. 2008) (considering proximate cause in context of whether an alleged omission delayed proper treatment); *Bustamante v. Ponte*, 529 S.W.3d 447, 456 (Tex. 2017) (same); *see also Dusek v. State*, 978 S.W.2d 129, 133 (Tex. App. 1998) (holding evidence insufficient to support injury-to-child conviction because child's broken leg treated same day as injury and no evidence treatment was delayed or recovery hindered by treatment timing). The Court therefore rejects T-Mobile's argument that, as a matter of law, Plaintiffs cannot establish proximate cause because the alleged defects here simply hindered or delayed treatment.

Cook's "call was not treated as serious[, and] [t]hey have failed to allege that the emergency personnel would have reacted differently had they received Cook's location sooner.").

In *Kelley v. City of Dallas*, this Court again addressed the issue of whether T-Mobile's failure to provide prompt location information from 9-1-1 calls was the proximate cause of a victim's death. 2017 WL 3891680, at *1 (N.D. Tex. Aug. 17, 2017) (Toliver, M.J.), *report and recommendation adopted*, 2017 WL 3868257 (N.D. Tex. Sept. 5, 2017) (Boyle, J.). The victim, D'Lisa Kelley, called her sister, screaming, but the call disconnected. *Id.* Kelley's grandmother called 9-1-1 for assistance. Proper procedures required the dispatcher to send police officers to Kelley's home, but in this case, the dispatcher was instructed by a supervisor to send officers only after T-Mobile "pinged" Kelley's cellphone and collected location information. *Id.* Officers were never sent to Kelley's home. *Id.* Her body was found several days later. *Id.* The Court dismissed the claims against T-Mobile for lack of proximate cause, again noting that "the intervening factors in the case at bar arguably result in even more attenuated circumstances than were present in either *Sanchez* or *Cook*." *Id.* at *5.

Plaintiffs here allege that T-Mobile's failure to provide proper hardware and software led to Ms. Cohen's 9-1-1 call being placed on hold. (Original Pet. ¶ 53). They also allege that T-Mobile failed to implement proper location-tracking technology that would have sent Ms. Cohen's call location to emergency responders. (*Id.* ¶ 42). These failures, according to Plaintiffs, prevented responders from providing timely aid, thereby causing Brandon Alex's death. (*Id.* ¶ 34). These allegations, if proven, would be sufficient to establish proximate cause. Plaintiffs allege that T-Mobile's alleged defects were a substantial, if not the only, factor in causing Brandon Alex's death, and that his death was a foreseeable consequence of those defects. The allegations were held not sufficient in *Sanchez, Cook,* and *Kelley* because the chain of causation

was too attenuated in those cases. Each caller in *Sanchez, Cook,* and *Kelley* connected with the 9-1-1 call center, but emergency responders did not properly act on the emergency. Medical personnel never checked on Sanchez's apartment. Police officers did not treat Cook's 9-1-1 call as serious and left without entering her home. The police dispatcher was required by Dallas Police Department's internal guidelines to send officers to Kelley's home, but chose not to do so. Accordingly, the plaintiffs in each case could not show that "any of the intervening parties would have acted differently" even if the 9-1-1 technology worked better or faster as plaintiffs allege it should have. *Cook*, 683 F. App'x at 321.

That is not the circumstance in this case. T-Mobile's 9-1-1 technology simply did not work at all. Ms. Cohen was placed on hold for more than 40 minutes and never connected with the 9-1-1 call center. There is no chain of causation to analyze because there are no intervening factors. If Plaintiffs' allegations are proven, T-Mobile's defective 9-1-1 technology was the only factor that prevented Brandon Alex from receiving timely medical aid. Accordingly, Plaintiffs have adequately alleged proximate cause.

### ii. Gross Negligence, Recklessness, or Intentional Misconduct

Gross negligence consists of both objective and subjective elements. *See U-Haul Int'l, Inc. v. Waldrip*, 380 S.W.3d 118, 137 (Tex. 2012). Plaintiffs must show that, objectively, "the act or omission involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others." *Id.* (citation omitted). Plaintiffs must also show that T-Mobile had "actual, subjective awareness of the risk involved, but nevertheless proceeded with conscious indifference to the rights, safety, or welfare of others."[3] *Id.*

---

[3] Similarly, recklessness requires "proof that a party knew the relevant facts" creating the danger and "did not care about the result." *See City of San Antonio v. Hartman*, 201 S.W.3d 667, 672 (Tex. 2006).

8

The Original Petition describes how T-Mobile made a conscious decision not to adopt technology that would have allowed Ms. Cohen's 9-1-1 call to be connected within a reasonable time, or that would have physically located her cellphone when she dialed 9-1-1. (Original Pet. ¶¶ 22-26, 42, 52). It further describes how T-Mobile instead continued to use outdated technology that led to hundreds of emergency calls being placed on hold. (*Id.* ¶ 25). The Mayor of Dallas apparently repeatedly warned that T-Mobile's technologies failed to actually connect callers to the 9-1-1 call center, resulting in many avoidable deaths. (*Id.* ¶¶ 26, 52, 53). Taken as true, Plaintiffs allege that T-Mobile's failure to adopt new technologies or fix its existing 9-1-1 telecommunications system involved an extreme degree of risk because the system simply did not work for many callers; they could not connect to the 9-1-1 call center at all. Plaintiffs further allege that T-Mobile knew of this risk, but failed to take any action. Accordingly, Plaintiffs have plausibly alleged gross negligence.

Because Plaintiffs have plausibly alleged proximate cause and gross negligence, the Court does not dismiss their claims on immunity grounds.[4]

### b. Strict Liability

To state a claim for strict products liability, a plaintiff must plausibly allege that: (1) a product has a defect rendering it unreasonably dangerous; (2) the product reached the consumer without substantial change in its condition from the time of original sale; and (3) the defective product was the producing cause of the injury to the user. *Syrie v. Knoll Int'l,* 748 F.2d 304, 306 (5th Cir. 1984). Unreasonably dangerous means dangerous "to an extent beyond that which

---

[4] T-Mobile argues that Plaintiffs have failed to allege negligence and gross negligence claims for the same reasons that statutory immunity is applicable. Because Plaintiffs have plausibly alleged sufficient facts to overcome immunity, the Court will not dismiss Plaintiffs' negligence and gross negligence claims.

9

would be contemplated by the ordinary user of the product, with the ordinary knowledge common to the community as to the product's characteristics." *Id.*

T-Mobile argues that Plaintiffs have failed to plausibly allege the first element. Plaintiffs must "identify a specific product" that is allegedly defective. *Del Castillo v. PMI Holdings N. Am. Inc.*, 2016 WL 3745953, at *16 (S.D. Tex. July 13, 2016). Identifying a product in "vague, generic, and collective terms" is not sufficient. *Id.* (dismissing strict liability claim where plaintiffs complained of a "quick shut-off valve," which was a "generic term" and could refer to "any one of hundreds of valves"). Here, Plaintiffs identify as defective T-Mobile's "telecommunications technology" which connects calls from its cellphones to a 9-1-1 call center. (Original Pet. ¶¶ 37-40). Although Plaintiffs use a generic term like "technology," their allegations provide sufficient information to give notice of what is allegedly defective. There is no requirement, at this stage, for Plaintiffs to identify a product name, which may or may not be public information. Additional specificity can be obtained through discovery. Accordingly, the Court concludes that Plaintiffs plausibly allege a strict liability claim.[5]

T-Mobile can only be strictly liable for its defective products, not services. *See First Nat. Bank of Hot Springs v. Tex Sun Beechcraft, Inc.*, 1992 WL 86624, at *4 (Tex. App. Apr. 29, 1992). To the extent Plaintiffs mean their strict liability claim to be based on allegedly defective services, the claim must be dismissed.

---

[5] T-Mobile also argues that Plaintiffs have failed to allege that any of its products are unreasonably dangerous. True, the fact that T-Mobile might have designed "a better, safer product" does not necessarily mean that the product it did design was unreasonably dangerous. *See Daberko v. Heil Co.*, 681 F.2d 445, 448 (5th Cir. 1982). However, Plaintiffs further add that Defendants' products allegedly did not operate properly with the 9-1-1 call center, leading to "hundreds of unanswered [9-1-1] calls" and people being placed on hold for more than 20 minutes at a time. (Original Pet. ¶¶ 23, 25-26, 39). This is enough to allege that T-Mobile products are unreasonably dangerous.

### c. Breach of Express Warranties

To state a claim for breach of an express warranty, a plaintiff-buyer must plausibly allege that (1) the defendant-seller made an express affirmation of fact or promise relating to the goods; (2) that affirmation or promise became part of the bargain; (3) the plaintiff relied upon that affirmation or promise; (4) the goods did not comply with the affirmation or promise; (5) the plaintiff was damaged by the noncompliance; and (6) the failure of the product to comply was the proximate cause of the plaintiff's injury. *See Omni USA, Inc. v. Parker-Hannifin Corp.*, 964 F. Supp. 2d 805, 814 (S.D. Tex. 2013). Furthermore, privity is required between the plaintiff and the defendant.

T-Mobile argues that Plaintiffs have failed to plausibly allege privity. Plaintiffs argue that T-Mobile breached express warranties that the cellphone[6] purchased by Bridget Alex was "reliable and of a quality that rendered [it] suitable for [its] intended use, including in emergency situations requiring the caller to be located quickly."[7] (Original Pet. ¶ 60). Plaintiffs, however, do not allege that Bridget Alex's phone did not comply with any warranty. They allege that Ms. Cohen's phone failed to satisfy the warranty on it, but nothing in the pleading suggests that any Plaintiff purchased or owned Ms. Cohen's phone. *See also Elsholtz v. Taser Int'l, Inc.*, 2007 WL 2781664, at *5 (N.D. Tex. Sept. 25, 2007) ("[Plaintiff's] express-warranty claim is unavailing inasmuch as she was not the purchaser of [defendant's] product, and therefore no privity exist.").

---

[6] The Original Petition vaguely refers to "telecommunications technology, software and/or mobile device services or products." (Original Pet. ¶ 60). However, in their briefs, Plaintiffs narrow their allegations to mobile devices. (*See* Pl. Resp. at 19, ECF No. 12). Plaintiffs are directed to specify the particular device in an amended pleading.

[7] T-Mobile argues that this is not an affirmation of fact necessary to create an express warranty. *See Bill & Jo Deane Bradford Investments, Inc. v. Cutter Aviation San Antonio, Inc.*, 2005 WL 3161083, at *2 (Tex. App. Nov. 23, 2005) ("In this case, [plaintiff] relies on statements that the [defendant's] engine was 'good, safe and reliable.' These statements amount to mere opinion or puffing."). However, the statement that a phone will allow the caller to be physically located in 9-1-1 calls is an affirmation of fact that could constitute an express warranty.

Accordingly, Plaintiffs' claim for breach of express warranty on either cellphone must be dismissed.

### d. Breach of Implied Warranty of Merchantability

To state a claim for breach of implied warranty of merchantability, a plaintiff must plausibly allege "a defect in the condition of the goods that renders them unfit for the ordinary purposes for which they are used." *Strauss v. Ford Motor Co.*, 439 F. Supp. 2d 680, 685 (N.D. Tex. 2006) (citation omitted). Privity is not required. *Garcia v. Texas Instruments, Inc.*, 610 S.W.2d 456, 465 (Tex. 1980). Plaintiffs allege that the cellphone[8] sold to Ms. Cohen was defective because it did not allow for location tracking during 9-1-1 calls. (Original Pet. ¶ 60). What constitutes an ordinary purpose of cellphones is a question of fact, and the Court finds that Plaintiffs have thus plausibly alleged a claim for breach of implied warranty of merchantability.

### e. Violations of the Deceptive Trade Practices Act

The DTPA prohibits trade practices deemed to be false, misleading, or deceptive. *See* TEX. BUS. & COM. CODE § 17.50(a)(1)-(2). However, in order to recover under the DTPA, a plaintiff must establish that he or she is a "consumer" under the statute by showing (1) that he or she acquired goods or services by purchase or lease, and (2) that the goods or services purchased or leased form the basis of the complaint. *McClung v. Wal-Mart*, 866 F. Supp. 306, 308 (N.D. Tex. 1994); *see also* TEX. BUS. & COM. CODE § 17.45(4).

Plaintiffs are not "consumers" under the DTPA. There are no allegations that Jashawn Alex purchased any of T-Mobile's goods or services. Bridget Alex allegedly purchased T-

---

[8] Again, the Original Petition vaguely refers to "telecommunications technology, software and/or mobile device services or products." (Original Pet. ¶ 60). However, in their briefs, Plaintiffs narrow their allegations to mobile devices. (*See* Pl. Resp. at 19). Indeed, T-Mobile's services are not even actionable. *See, e.g.*, *Sw. Bell Tel. Co. v. FDP Corp.*, 811 S.W.2d 572, 574 (Tex. 1991). Plaintiffs are directed to specify the particular device in an amended pleading.

Mobile's cellphone and service, but her claims do not arise from them. The basis of the Original Petition is the alleged defects and misrepresentations related to Ms. Cohen's cellphone and service. Again, nothing in the Original Petition suggests that any Plaintiffs purchased Ms. Cohen's cellphone or service.

Furthermore, even if Brandon Alex had been a consumer, any DTPA claim on behalf of his Estate must be dismissed because a DTPA claim does not survive the death of the consumer. DTPA. *See Elmazouni v. Mylan, Inc.*, 220 F. Supp. 3d 736, 745 (N.D. Tex. 2016) (Lynn, C.J.) ("Although the Texas Supreme Court has not decided whether DTPA claims survive the death of the consumer, and there is no consensus on that issue among the intermediate state appellate courts, this Court has previously concluded that DTPA claims do not survive the death of the consumer."). Accordingly, Plaintiffs' DTPA claims must be dismissed.

### f. Misrepresentation

The Original Petition is unclear as to whether Plaintiffs bring a claim for negligent misrepresentation, fraudulent misrepresentation, or both.[9] Regardless of the particular claim, Federal Rule of Civil Procedure 9(b) requires allegations of "fraud or mistake" to be "state[d] with particularity. At a minimum, Plaintiffs must "specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Flaherty & Crumrine Preferred Income Fund, Inc. v. TXU Corp.*, 565 F.3d 200, 207 (5th Cir. 2009) (citation omitted).

T-Mobile allegedly and falsely represented that its products and services "are reliable and of a quality that rendered them suitable for their intended use, including in emergency situations requiring the caller to be located quickly," and that its "technology is state of the art and that the

---

[9] In their briefs, Plaintiffs aver that they only seek recovery for negligent misrepresentation. (*See* Pl. Resp. at 22). Plaintiffs are directed to specify their claim is for negligent misrepresentation, not fraud, in an amended pleading.

13

safety of [its] customers is paramount." (Original Pet. ¶ 68). For the former, Plaintiffs do not identify the speaker nor state when and where the statements were made. For the latter, the Court finds that the representation is not an actionable statement of fact. *See Deburro v. Apple, Inc.*, 2013 WL 5917665, at *4 (W.D. Tex. Oct. 31, 2013) ("Many of the representations identified by Plaintiffs are mere puffery, incapable of being labeled true or false (e.g., 'state of the art,' 'breakthrough')."). Accordingly, Plaintiffs' misrepresentation claim must be dismissed.

### g. Derivative Claims

#### i. Bystander

In Texas, bystanders may recover damages for mental anguish suffered as a result of witnessing a serious or fatal accident involving a close family member. A bystander plaintiff must establish that: (1) the plaintiff was located near the scene of the accident; (2) the plaintiff suffered shock as a result of a direct emotional impact upon the plaintiff from a sensory and contemporaneous observation of the accident, as opposed to learning of the accident from others after its occurrence; and (3) the plaintiff and victim were closely related. *See United Servs. Auto Ass'n v. Keith,* 970 S.W.2d 540, 541–42 (Tex. 1998); *see also Rodriguez v. Riddell Sports, Inc.*, 242 F.3d 567, 578 (5th Cir. 2001). Some lower courts have held that "actual observance of the accident is not required if there is otherwise an experiential perception of it," but they still require that the plaintiff not learn of the accident from others after its occurrence. *See, e.g.*, *Landreth v. Reed*, 570 S.W.2d 486, 490 (Tex. App. 1978).

Bridget Alex asserts a claim for bystander recovery, but she did not witness Brandon Alex's accident. (*See* Original Pet. ¶¶ 31, 72). She learned of the accident from Ms. Cohen. (*Id.*) Only then did she drive home and later take Brandon Alex to the emergency room.

14

Because Bridget Alex did not witness the accident and instead learned of the accident from another person, she cannot recover as a bystander.[10]

### ii. Survival

T-Mobile argues that Plaintiffs do not have the capacity to bring a survival claim. Generally, only the estate's personal representative has the capacity to bring a survival claim. *Nicholson v. XTO/EXXON Energy, Inc.*, 2015 WL 1005338, at *2 (N.D. Tex. Mar. 4, 2015) (Kinkeade, J.). Under certain circumstances, such as (1) if the heirs can prove there is no administration pending and none is necessary or (2) when a familial agreement vitiates the need for an administration of the estate, then the heirs may be entitled to sue on behalf of the decedent's estate. *Id.*

Bridget Alex and Detreasure Coker, Brandon's alleged biological mother, had been engaged in a probate dispute over who is the Estate's proper administrator. *See In the Matter of the Estate of Brandon Alex, Deceased*, No. PR-17-01591-1 (Dallas Cty. Prob. Ct. May 3, 2017). The matter has been resolved and dismissed by settlement. (*See* Not. at 1, ECF No. 25). Plaintiffs further allege that the Estate "has no debts and no administration upon the estate is pending and none is necessary or desired by those interested in the estate." (Original Pet. ¶ 5). Accordingly, Plaintiffs have plausibly alleged their capacity as Brandon Alex's heirs to recover under the survival statute.

---

[10] The Texas Supreme Court's decision in *United Services Auto. Ass'n v. Keith* is analogous. 970 S.W.2d at 542. In *Keith,* Dianna Keith arrived on the scene of her daughter's car accident and heard the "scary noises" her daughter was making due to her injuries. *Id.* at 541. Keith watched as emergency responders removed her daughter from the car; she then accompanied her daughter in the ambulance to the hospital. *Id.* Despite Keith being a witness to her daughter's pain and suffering that resulted from the accident, the court denied the bystander claim. *Id.* at 542 ("Texas law still requires the bystander's presence when the injury occurred and the contemporaneous perception of the accident."). Accordingly, in Texas, plaintiffs cannot recover even where the observation of the effects of the injury creates an emotional impact.

### iii. Wrongful Death

T-Mobile also argues that Plaintiffs do not have the capacity to bring a wrongful death claim. Only "the surviving spouse, children, and parents of the deceased" may bring a claim for wrongful death. TEX. CIV. PRAC. & REM. CODE § 71.004(b). An estate therefore may not assert a wrongful death claim on its own behalf. Furthermore, all persons entitled to recover under the statute must be a party to the same suit or the pleading must aver that the action is brought for the benefit of all of those entitled to recover. *See id.*; *Avila v. St. Luke's Lutheran Hosp.*, 948 S.W.2d 841, 850 (Tex. App. 1997). Jashawn Alex and Bridget Alex do allege that the claim is brought for the benefit of all of those entitled to recover.[11] (Original Pet. ¶ 76). Accordingly, the Court concludes that Plaintiffs plausibly allege a wrongful death claim.

## V. Conclusion

For the reasons stated above, the Motion for Judgment on the Pleadings is **GRANTED IN PART** and **DENIED IN PART**, and the Motion for Leave is **GRANTED**. Plaintiffs' breach of express warranty, misrepresentation, DTPA, and bystander claims are **DISMISSED WITHOUT PREJUDICE**. Plaintiffs have leave to amend their pleading, addressing those defects identified in this Order that are curable, by March 1, 2018. *See also Hart v. Bayer Corp.*, 199 F.3d 239, 248 n.6 (5th Cir. 2000) ("Although a court may dismiss the claim, it should not do so without granting leave to amend, unless the defect is simply incurable.").

Because the Court's November 2, 2017, Order stayed the case pending the resolution of T-Mobile's Motion for Judgment on the Pleadings, (ECF No. 21), the stay is therefore **LIFTED**.

---

[11] The Court recognizes that Detreasure Coker has a pending lawsuit before this Court, also alleging a wrongful death claim for the death of Brandon Alex. *See Estate of Brandon Alex v. T-Mobile US, Inc.*, No. 3:17-cv-2622-M (N.D. Tex. Oct. 16, 2017). However, it is not necessary for this present suit to be brought "with the knowledge and consent of all the beneficiaries; it is enough that the suit appear to be brought for their benefit." *Martone v. Livingston*, 2015 WL 9259089, at *2 (S.D. Tex. Dec. 18, 2015). In any event, the Court intends to consolidate Ms. Coker's suit with this one, so any assertion that Ms. Coker must participate in this suit in order for Plaintiffs to recover under the wrongful death statute is moot.

The parties are directed to confer and submit a revised joint proposal for the contents of a scheduling order, by March 8, 2018.

**SO ORDERED.**

February 9, 2018.

_____
**BARBARA M. G. LYNN
CHIEF JUDGE**